IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| LARRY D. CHOATE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 04-5043-CV-SW-RED-SSA |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Larry D. Choate ("Plaintiff") seeks judicial review of the Commissioner's denial of his request for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.,* as amended and his request for disability benefits under Title II, 42 U.S.C. § 405(g). Plaintiff has exhausted all of his administrative remedies, and therefore, pursuant to Section 1631(c)(3) of the Act and 42 U.S.C. § 1383(c)(3), judicial review is now appropriate. After carefully reviewing the record, the Court **AFFIRMS** the decision of the Commissioner.[1]

## I. Background

The complete facts and arguments are presented in the parties' briefs, and consequently will be duplicated here only to the extent necessary. Additionally, the ALJ's decision within the administrative record fully sets forth his findings and as such will not be repeated herein in its entirety except to the extent necessary to address Plaintiff's arguments.

---

[1] Because the Court finds that substantial evidence supports the ALJ's decision and that the ALJ applied the correct standard of law, the Court adopts much of Defendant's brief without quotation or citation.

## II. Standard of Review

The Court's review is limited to determining whether the Commissioner applied the correct standard of law and whether the Commissioner's findings of fact are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3); *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). Substantial evidence is relevant evidence that a reasonable mind would accept as sufficient to support the Commissioner's conclusion. *See Warburton*, 188 F.3d at 1050. In making this determination, the Court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it. *See id.* The Court may not reverse the Commissioner's decision merely because substantial evidence supports a different result. *See Pierce v. Apfel*, 173 F.3d 704, 706 (8th Cir. 1999). This is true even if the Court might have weighed the evidence differently and reached a different result if a de novo review were applied. *See Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992).

To receive disability benefits a claimant must show: (1) a medically determinable physical or mental impairment that has lasted, or can be expected to last, for not less than twelve months; (2) an inability to engage in any substantial gainful activity; and (3) the inability results from the impairment. *See* 42 U.S.C. §§ 423 (d)(1)(A), (d)(2) (2000); *see also Timmerman v. Weinberger*, 510 F.2d 439, 442 (8th Cir. 1975). The Court reviews the ALJ's decision to determine whether the ALJ followed the Commissioner's implementing regulations, which set out a five-step, burden-shifting process for determining whether the claimant has a "disability" within the meaning of the Social Security Act.

The first step in the process is to determine whether the claimant is engaging in "substantial gainful activity." *See Lannie v. Shalala*, 51 F.3d 160, 163 (8th Cir. 1995). If the

Case 3:04-cv-05043-RED   Document 16   Filed 09/30/05   Page 2 of 12

claimant is not engaging in substantial gainful activity, then the second step is to ascertain whether the claimant's impairment (or combination of impairments) is severe. *See id.* If the impairment is not severe, the claim is denied. Where the impairment is severe, it is compared to the Listing of Impairments (the "Listing"),[2] which contains impairments that are considered to be so severe that they preclude substantial gainful activity as a matter of law. *See id.* If the severity of the impairment equals or exceeds that of a listed impairment, the claim is allowed. *See id.* When a severe impairment does not equal or exceed any impairments in the Listing, however, the Commissioner must determine the claimant's residual functional capacity ("RFC"). *See id.* If, given the claimant's RFC, he can meet the demands of past work, the claim is denied. *See id.*

Through these first four steps, the burden is on the claimant to prove that he or she is disabled. If the claimant is not able to perform his or her past work, the burden shifts to the Commissioner to prove that there are jobs in the national economy that the claimant can perform. *See Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (referencing the Administration's Rule, codified at 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003) requiring that although the burden of production shifts to the Commissioner at step five, the ultimate burden of persuasion remains with the claimant); *see also Barnhart v. Thomas*, 540 U.S. 20, 24, 28 (2003) (noting that the existence of jobs in the national economy must be proved only at step five); 20 C.F.R. § 404.1566 (2003) (defining how the Commissioner determines whether jobs exist in the national economy in substantial numbers). In a case of solely exertional impairments,[3] the Commissioner

---

[2] The Listing of Impairments is found at 20 C.F.R. § 404, subpt. P, app. 1 (2003).

[3] Exertional impairments are those "affecting the ability to perform physical labor." *Foreman v. Callahan*, 122 F.3d 24, 25 (8th Cir. 1997). They generally relate to the strength requirements of a job. *See id.*

-3-

may consult the Medical-Vocational Guidelines[4] to meet his or her burden of proving the availability of jobs in the national economy that the claimant can perform. *See Hall v. Chater*, 62 F.3d 220, 224 (8th Cir. 1995). If, however, the claimant also has a significant nonexertional impairment,[5] the Commissioner must use vocational expert testimony to meet the burden of showing the existence of jobs in the national economy that the claimant is capable of performing. *See Foreman v. Callahan*, 122 F.3d 24, 25 (8th Cir. 1997). If such jobs do not exist in significant numbers, the claim is allowed. *See Hall*, 62 F.3d at 224.

### III. Discussion

Plaintiff challenges seven (7) aspects of the ALJ's decision. First, Plaintiff contends that the ALJ failed to grant controlling weight to the opinions of Plaintiff's treating physicians as outlined in 20 C.F.R. § 404. Second, Plaintiff alleges the ALJ erred in failing to make an initial disability determination prior to considering the issue of substance abuse. Third, Plaintiff argues that the ALJ erred by giving disproportionate weight to the physical assessment performed by a non-examining and non-treating physician. Fourth, Plaintiff contends that the ALJ failed to properly analyze the credibility of Plaintiff's testimony. Fifth, Plaintiff asserts that the ALJ erred by failing to consider

---

[4] The Medical-Vocational Guidelines are found at 20 C.F.R. pt. 404, subpt. P, app. 2 (2003). The Guidelines are "fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairment." *Foreman*, 122 F.3d at 25.

[5] In this context, "significant" refers to whether the claimant's nonexertional impairment or impairments preclude the claimant from engaging in the full range of activities listed in the Guidelines under the demands of day-to-day life. *See Lucy v. Chater*, 113 F.3d 905, 908 (8th Cir. 1997). In other words, an ALJ may rely on the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the guidelines. *See id.*

-4-

the third party testimony of Plaintiff's wife. Sixth, Plaintiff argues that the ALJ committed reversible error by suggesting that Dr. Trone was influenced by sympathy for Plaintiff to provide a favorable medical diagnosis. Finally, Plaintiff contends that the ALJ erred by substituting the ALJ's own medical opinion for that of Plaintiff's treating physicians. Each argument will be discussed separately below.

*A. Controlling Weight of Treating Physicians*

At the time this claim was filed Plaintiff was being treated primarily by two physicians: Dr. Freiman, a cardiovascular specialist, who Plaintiff saw for treatment of his heart and lung ailments, and Dr. Trone, who monitored Plaintiff's complaints of back pain. Plaintiff alleges the ALJ erred by failing to give controlling weight to the medical opinion of each treating physician.

**1. Dr Freiman's Opinion**

Dr. Freiman wrote a letter dated August 13, 2003, in support of Plaintiff's claim. In this letter, Dr. Freiman stated that Plaintiff suffers from coronary artery disease and frequent chest pain, that he is "disabled from a cardiac standpoint" and that in his opinion Plaintiff is "eligible for medical assistance disability."

However, there is substantial evidence in the record that contradicts these findings. During an appointment on August 7, 2002, Plaintiff reported "feeling better than he had in a long time," with no chest pain and only mild shortness of breath. (Tr. 211) Similarly, an x-ray taken on June 25, 2002, showed no acute cardiopulmonary disease and an electrocardiogram dated March 12, 2003, showed no clinically significant cardiac structural or functional abnormalities (Tr. 205, 212).

Although the opinions of a treating physician are entitled to substantial weight, *Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995) (citing *Ward v. Heckler*, 786 F.2d 844, 846 (8th Cir.

1986)), such an opinion is not conclusive and must be supported by medically acceptable clinical or diagnostic data. *See Kelley v. Callahan,* 133 F.3d 583, 589 (8th Cir. 1998); *Trossauer v. Chater*, 121 F.3d 341, 343 (8th Cir. 1997). Here, the ALJ discounted Dr. Freiman's opinion that Plaintiff was disabled based on inconsistencies between the objective medical evidence and the letter written by Dr. Freiman on Plaintiff's behalf. Such discrepancies led the ALJ to conclude that "the opinions of Dr. Freiman concerning the plaintiff's limitations appear to be derived from the claimant's [subjective] statements to Dr. Freiman rather than his medical opinion based on objective medical evidence." (Tr. 25) The Eighth Circuit has held that an ALJ is justified in discrediting the opinion when it was based solely on the claimant's subjective complaints and was not supported by other findings. *Woolf v. Shalala*, 3 F.3d 1210 (8th Cir. 1993). It is clear that the ALJ properly evaluated Dr. Freiman's letter in light of the evidence on record as a whole. Thus, the ALJ' s determination is supported by evidence in the record.

### 2. Dr. Trone's Opinion

In addition to Dr. Freiman, Plaintiff also saw Dr. Trone, who diagnosed Plaintiff with chronic musculoskeletal pain syndrome, hypertension, and chronic obstructive airway disease. (Tr. 300) In a letter dated August 18, 2003, Dr. Trone opined that Plaintiff's condition prevented him from "doing hard labor including bending, stooping, lifting, or walking for extended periods of time." (Tr. 300)

As previously stated, a treating physician's opinion is not conclusive and must be supported by medically acceptable clinical or diagnostic data. *Kelley,* 133 F.3d at 589. Where a physician's opinion is itself inconsistent, the ALJ is entitled to give little weight to the opinion. *Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir. 1996). Here the ALJ noted the inconsistencies between Dr. Trone's

-6-

Medical Source Statement-Physical and his letter of August 18, 2003. Thus, the ALJ properly evaluated Dr. Trone's Medical Source Statement-Physical in light of the evidence on record as a whole. The ALJ's determination is supported by evidence in the record.

*B. Initial Disability Determination*

Plaintiff next contends that under the Eighth Circuit's holding in *Brueggemann v. Barnhart*, 348 F.3d 689 (8th Cir. 2003), the ALJ committed reversible error by giving considerable weight to Plaintiff's smoking addiction and occasional marijuana use prior to his initial determination of disability.

However, Plaintiff misreads *Brueggemann*. which requires the ALJ to reach their initial determination using the five-step approach of 20 C.F.R. § 404.1520 "without segregating out any effects that might be due to substance abuse disorders." *Brueggemann*, 348 F.3d at 694. Only if after this initial determination the ALJ finds that the claimant would be disabled considering all of his impairments is the ALJ required to go through the five step sequential evaluation process again, eliminating any impairments due to drug or alcohol abuse. *See id.* In this case, the ALJ's initial determination was that Plaintiff was not disabled. This determination included any effects of Plaintiff's smoking or marijuana use, which only could have helped Plaintiff reach a disability determination, not hinder it. Since the ALJ determined that Plaintiff was not disabled, the ALJ was not required to go through the sequential process again, eliminating impairments due to drug or alcohol abuse.

Plaintiff has simply failed to show how he was prejudiced by the consideration of his smoking habits prior to his initial determination of disability. Therefore, the ALJ did not err by considering Mr. Choate's smoking and marijuana use prior to his initial determination of

-7-

disability.

## C. Examination by Non-Treating Physician

Plaintiff's third contention is that the ALJ erred by giving controlling weight to the testimony of Dr. Vincent Previti, a non-treating physician who performed a Residual Physical Functional Capacity Assessment on Plaintiff in January 2002. However, in his decision, the ALJ specifically states that was not giving controlling weight to Dr. Previti's testimony. (Tr. 25) Furthermore, the ALJ's opinion clearly indicates that Dr. Previti's opinion was only a small part of his analysis. The decision shows that the ALJ clearly considered the whole record, including records provided by Drs. Freiman, Trone, Coulter as well as testimony from Mr. Choate and his wife. (Tr. 19-22) Although his ultimate findings may have been similar to those of Dr. Previti's, this factor is not significant because the ALJ properly conducted an independent analysis of the record as a whole. *See McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

## D. Analysis of Plaintiff's Testimony

Plaintiff argues that the ALJ erred by failing to give proper weight to the credibility of Plaintiff's complaints regarding the nature and extent of his impairments. The burden of deciding questions of fact, including the credibility of a plaintiff's subjective testimony, rests with the Commissioner. *See Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987). Generally, the ALJ is in a better position than the Court to determine credibility. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996). When an ALJ assesses a claimant's subjective complaints relating to nonexertional impairments, the claimant must prove, on the record as a whole, that the disabling impairment results from a medically determinable physical or mental impairment. *See* 20 C.F.R. §§ 404.1529, 416.929 (2004). However, the claimant need not produce direct medical evidence of the cause and

-8-

effect relationship between the impairment and the degree of the claimant's subjective complaints. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Accordingly, when making a disability determination, the adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See id.* However, the adjudicator may discount the complaints by considering the claimant's prior work record and observations by third parties and physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the subjective infirmity; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *See Melton v. Apfel*, 181 F.3d 939, 941 (8th Cir. 1999); *Polaski*, 739 F.2d at 1322.

In evaluating the *Polaski* factors, the Eighth Circuit has advised that the primary question is not whether the claimant actually experiences the subjective complaints alleged, but whether those symptoms are credible to the extent that they prevent the claimant from performing substantial gainful activity. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *McGinnis v. Chater*, 74 F.3d 873, 874 (8th Cir. 1996); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993); *Pickner v. Sullivan*, 985 F.2d 401, 404 (8th Cir. 1993). An ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.

In this case, the ALJ found Plaintiff's self-reported daily activities to be inconsistent with his allegations of disability. (Tr. 21) For instance, Plaintiff did work during his period of alleged disability, albeit intermittently. (Tr. 21) Generally, any work performed during a period in which a Plaintiff alleges that he was under a disability may demonstrate an ability to perform substantial gainful activity. *See* 20 C.F.R. §§ 404.1571, 416.971; *Naber v. Shalala,* 22 F.3d 186, 188-89 (8th Cir. 1994). Furthermore, the ALJ noted that the medical evidence was not consistent with Plaintiff's

-9-

Case 3:04-cv-05043-RED   Document 16   Filed 09/30/05   Page 9 of 12

allegations of disability, and that Plaintiff ignored warnings from Doctors to quit smoking and was otherwise noncompliant with medication and treatment instructions. (Tr. 21-22) Noncompliance with treatment may be considered in a credibility analysis. *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001). Finally, the ALJ properly found Plaintiff's allegations of disability to be inconsistent with his stated abilities. At the hearing, Plaintiff testified that he could stand for 30 to 45 minutes, sit for an hour or two, and lift up to fifty (50) pounds. (Tr. 399) Such stated abilities are inconsistent with disability. The ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole. *See Wheeler v. Apfel*, 224 F.3d 891 (8th Cir. 2000). Therefore, it is apparent that there is substantial evidence supporting the ALJ's decision and that the ALJ's opinion properly took into account Plaintiff's complaints and correctly discounted his complaints based on the evidence as a whole.

### *E. Mrs. Choate's Testimony*

Plaintiff next argues that the ALJ failed to properly address the third party testimony of Mrs. Choate and how it factored into the evidence. However, the record indicates that the ALJ did consider Mrs. Choate's testimony and found that it added little in support of Plaintiff's claim. (Tr. 21) Conversely, the ALJ noted that her testimony was similar to Plaintiff's and that she had a vested interest in the outcome of the case. (Tr. 21)

The Eighth Circuit has held that corroborating testimony of an interested witness such as a spouse may be discounted because that witness has a financial interest in the case. *See Rautio v. Bowen*, 862 F.2d 176, 189 (8th Cir. 1988). Additionally, even if the ALJ failed to provide specific reasons for discrediting Mrs. Choate's testimony, it is evident that most of her testimony was discredited by the same evidence that discredited Plaintiff's testimony. *See Lorenzen v.*

-10-

Case 3:04-cv-05043-RED   Document 16   Filed 09/30/05   Page 10 of 12

*Chater*, 71 F.3d 316, 318-19 (8th Cir. 1995).

### F. ALJ's Statements about Dr. Trone

Plaintiff submits that the ALJ committed reversible error by questioning Dr. Trone's integrity, and suggesting that Dr. Trone was prompted to write a favorable Medical Source Statement -Physical based on sympathy for Plaintiff rather than a well-reasoned medical opinion. However, it is clear from the record that the ALJ primarily considered Dr. Trone's diagnosis in the Medical Source Statement-Physical by way of comparison with the historical treatment record of Plaintiff, and taking note of the inconsistencies therein. (Tr. 23) If anything, the statements made by the ALJ were merely attempts to reconcile the discrepancies between Plaintiff's treatment record and the Medical Source Statement. Nevertheless, the statements did not affect the outcome of this case. Therefore, even if the trial judge erred in making the statements, it was harmless. *See Lubinski v. Sullivan*, 952 F.2d 214, 216 (8th Cir. 1991).

### G. ALJ's Alleged Substitution of his Own Medical Opinion

Finally, Plaintiff contends that the ALJ erred by substituting the ALJ's own medical opinion for that of Plaintiff's treating physicians in three ways: 1) by discrediting the opinions of Drs. Freman and Trone; 2) by relying on the functional capacity assessment prepared by Dr. Previti; and 3) by imposing a hypothetical question to a vocational expert that did not encompass all relevant impairments. The Court finds many of these arguments to be repetitive, having been previously raised elsewhere in Plaintiff's Brief. Although unclear, the court is willing to concede that what Plaintiff is really attempting to raise is a challenge to the ALJ's residual functional capacity ("RFC") determination, and will treat it as such.

A residual functional capacity is "the most [a claimant] can do despite [his] limitations." 20

Case 3:04-cv-05043-RED   Document 16   Filed 09/30/05   Page 11 of 12

C.F.R. § 404.1545. Plaintiff's "'residual functional capacity is a medical question.'" *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). However, the ALJ must determine a claimant's RFC based on the totality of all relevant evidence, including medical records, third-party observations, the claimant's own descriptions of her limitations, and the credibility of the claimant. *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004); *Pearsall v. Massanari*, 274 F.3d 1211, 1217-18 (2001); *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The RFC determination is a medical question, and there must be some medical evidence to support the determination of the claimant's RFC. *Lauer* 245 F.3d at 704; *Singh*, 222 F.3d at 448.

In this case, it is clear that the ALJ considered all of the relevant evidence in the record before determining Plaintiff's RFC. As such, the ALJ did not substitute his personal opinion for that of Mr. Choate's treating physicians, but rather, based his findings on whether the credible evidence before him sustained a finding of disability. *See Morse v. Shalala*, 16 F.3d 865, 873 (8th Cir. 1994). Therefore, the ALJ did not err because he did not substitute his opinion for that of the treating physicians.

## IV. Conclusion

Upon a review of the record, the Court finds that substantial evidence supports the ALJ's RFC determination, and the determination that Plaintiff did not have a severe physical impairment, and that the decision as a whole is supported by substantial evidence. Accordingly, it is hereby

**ORDERED** that the decision of the ALJ is **AFFIRMED.**

DATE: September 30, 2005   */s/ Richard E. Dorr*
                           RICHARD E. DORR, JUDGE
                           UNITED STATES DISTRICT COURT

-12-